UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-cv-22094-ALTMAN

**MAHSA PARVIZ**,

    *Petitioner*,

v.

**ROGER D. MORRIS**,

    *Respondent.*

_____/

## ORDER

The Petitioner, Mahsa Parviz, has filed a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1], challenging the Bureau of Prisons' ("BOP") computation of her federal sentence. The Government filed a Response, arguing that Parviz "did not exhaust her administrative remedies . . . prior to filing" her Petition, and that, "even if [she] had[,] she would not be entitled to relief." Response [ECF No. 14] at 5–6. In reply, Parviz insists that she "exhausted all available administrative remedies[.]" Reply [ECF No. 22] at 3. Parviz separately filed her second *Ex Parte* Motion for Release ("Motion for Release") [ECF No. 26], seeking "release . . . on bond pending adjudication of the merits of her Petition." *Id.* at 1. After careful review, we agree that Parviz failed to exhaust her administrative remedies. The Petition is therefore **DISMISSED**, and Parviz's Motion for Release is **DENIED as moot**.

## THE FACTS

In 2019, Mahsa Parviz "devised a scheme to obtain a passport" for "her biological daughter over whom she had lost her parental rights," "kidnap her from her foster family," and take her daughter "with her out of the United States." *United States v. Parviz*, 131 F.4th 966, 968 (9th Cir. 2025). On August 9, 2019, Parviz was arrested in Collin County, Texas. *See Texas v. Parviz*, No. 219-85015-

2019, Docket (Tex. 219th Dist. Ct. Aug. 9, 2019). Parviz pled guilty to one count of attempting to commit kidnapping and, on January 5, 2021, was sentenced to 516 days in state prison—though she was immediately released after receiving credit for the time she spent in pretrial detention. *See* Judgment of Conviction [ECF No. 14-1] at 6.

Soon after her release, Parviz reached out to Collin County police officers to recover "passports that had been found in a search of her car after her arrest[.]" *Parviz*, 131 F.4th at 969. This led the police to contact federal passport authorities, who "t[ook] a closer look" at Parviz's fraudulent passport application. *Ibid.* On June 22, 2021, a grand jury in the Central District of California indicted Parviz on one count of making a false statement in an application for a passport, in violation of 18 U.S.C. § 1542, and one count of aggravated identify theft, in violation of 18 U.S.C. § 1028A(a)(1). *See* Indictment, *United States v. Parviz*, No. 21-cr-00293-DMG (C.D. Cal. June 22, 2021), ECF No. 1 at 1–3. On July 12, 2022, Parviz pled guilty to both counts, and a federal judge sentenced her to 61 months in prison—to be followed by a three-year term of supervised release. *See* Judgment, *United States v. Parviz*, No. 21-cr-22093-DMG (C.D. Cal. July 12, 2022), ECF No. 121 at 1.

The BOP credited Parviz's federal sentence from the date of her arrest on July 21, 2021, to the day before her sentence, July 11, 2022. *See* Public Information Inmate Data [ECF No. 14-1] at 23. In *this* Petition, Parviz argues that the BOP *also* should have given her "credit for time served" in state pretrial detention "from August 9, 2019, to January 5, 2021[.]" Petition at 2. She also contends that, "[i]f the BOP applied the ETCs and other time credits that [she] has earned, [she] would be entitled to immediate release . . . without any term of supervision remaining." *Ibid.* (cleaned up). The Petition is now ripe for adjudication.

## THE LAW

"[C]hallenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241." *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir.

2008). A § 2241 petition is the proper vehicle to challenge the calculation of earned time credits since inmates are entitled to "certain due process protections" before the BOP reduces the amount of credits he or she has earned. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 475–76 (11th Cir. 2015) ("The Supreme Court has held that inmates must be given certain due process protections before they are deprived of their protected liberty interest in good time credits, including at least 24 hours advance written notice of the charges against them and the right to call witnesses and present documentary evidence."); *see also, e.g.*, *Abboud v. Warden, FCC Coleman-Low*, 2022 WL 3544312, at *1 (M.D. Fla. Aug. 18, 2022) (Scriven, J.) ("And, because Abboud's claim about the BOP's calculation of earned time credits is a challenge to the execution of his sentence, he has an alternative avenue of relief under 28 U.S.C. § 2241.").

However, "[a]n inmate must exhaust available administrative remedies before seeking relief in a § 2241 proceeding." *Blevins v. FCI Hazelton Warden*, 819 F. App'x 853, 855–56 (11th Cir. 2020). Although exhaustion is not a "jurisdictional requirement," we must consider whether the petitioner properly exhausted her remedies "if the respondent properly asserts the defense." *Santiago-Lugo*, 785 F.3d at 475. To exhaust her administrative remedies, a petitioner "must properly take each step within the administrative process," as defined by the institution with custody over. *Varner v. Shepard*, 11 F.4th 1252, 1260 (11th Cir. 2021); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Administrative law does this by requiring proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002))). Courts throughout our Circuit have uniformly concluded that petitioners challenging the calculation of ETCs under the First Step Act must exhaust their available remedies, even if exhaustion appears to be futile. *See Vargas v. Stone*, 2022 WL 6791641, at *3 (S.D. Ga. Sept. 13, 2022) (Epps, Mag. J.) ("[C]ourts considering the issue of calculation of time credits under the First Step Act have enforced exhaustion requirements and

rejected futility arguments."), *report and recommendation adopted*, 2022 WL 6768225 (S.D. Ga. Oct. 11, 2022) (Bowen, J.); *Cannata v. United States*, 2021 WL 4254942, at *2–3 (N.D. Fla. Aug. 18, 2021) (Cannon, Mag. J.) (dismissing a § 2241 petition challenging the calculation of ETCs since "[c]ourts in this circuit have instead found that exhaustion is required"), *report and recommendation adopted*, 2021 WL 4244283 (N.D. Fla. Sept. 17, 2021) (Walker, C.J.).

**ANALYSIS**

Parviz advances two claims. *First*, she says that the BOP must credit her for the time she spent in state custody. *Second*, she claims that she's entitled to "ETCs and other time credits" she's earned in federal prison. Petition at 2. In its Response, the Government argues that Parviz failed to exhaust her administrative remedies. *See* Resp. at 4 ("Parviz did not exhaust her administrative remedies regarding her claim for jail credit or FSA ETCs prior to filing her § 2241 petition in this Court. Thus, her petition should be denied for failure to exhaust."). Since the Government has properly asserted an exhaustion defense, we must address it before reaching the Petition's merits. *See Fleming v. Warden of FCI Tallahassee*, 631 F. App'x 840, 842 (11th Cir. 2015) ("[T]he exhaustion requirement [is] *still* a requirement and . . . courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" (emphasis added & quoting *Santiago-Lugo*, 785 F.3d at 475)).

In *Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008), the Eleventh Circuit laid out a two-step test for us to use in determining whether a prisoner has successfully exhausted her administrative remedies. *See Blevins*, 819 F. App'x at 856 (applying the *Turner* Test "in a § 2241 proceeding" (citation omitted)). *First*, "the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner*, 541 F.3d at 1082. If the plaintiff's version of the facts indicates that he failed to exhaust his administrative remedies, then "the complaint [must be] dismissed[.]" *Ibid. Second*, if the prisoner passes the first step, the burden shifts to the defendant to prove, with competent evidence, "that the plaintiff

4

has failed to exhaust his administrative remedies[.]" *Ibid.* At that point, we must "make specific findings in order to resolve the disputed factual issues related to exhaustion" and, based on those factual findings, determine whether the prisoner has exhausted all available remedies. *Id.* at 1082–83. The defendant "bear[s] the burden of proving" that the prisoner failed to exhaust his administrative remedies. *Id.* at 1082.

Parviz was thus required to follow the BOP's "established regulations governing formal review of inmate complaints," otherwise known as the "Administrative Remedy Program." *Keys v. United States Dep't of Justice*, 136 F. App'x 313, 314 (11th Cir. 2005) (citing 28 C.F.R. § 542.10, *et seq.*). The Administrative Remedy Program is a "three-tiered process" that requires an inmate to complete the following steps. *First*, after an inmate seeks informal resolution, she must file a "formal written Administrative Remedy Request" on a BP-9 Form with the Warden within "20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). *Second*, if she's "not satisfied with the Warden's response," the inmate must "submit an Appeal" on a BP-10 Form "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response." *Id.* § 542.15(a). *Third*, if the inmate is unsatisfied with the Regional Director's response, she must appeal on a BP-11 Form "to the General Counsel [(or "Central Office")] within 30 calendar days of the date the Regional Director signed the response." *Ibid.*[1]

At each step, the inmate must satisfy the BOP's form requirements. *See id.* § 542.15(b). If an inmate fails to timely (and properly) appeal her grievance through all three tiers of the Administrative Remedy Program, she's failed to exhaust her administrative remedies. *See Irwin v. Hawk*, 40 F.3d 347, 349 n.2 (11th Cir. 1994) ("An inmate has not fully exhausted his administrative remedies until he has

---

[1] All reviewing officials in the Administrative Remedy Program must respond to an inmate's grievance within a set timeframe. If an inmate "does not receive a response within the time allotted for reply," she must "consider the absence of a response to be a denial at that level" and continue to appeal her grievance to the next-level authority. 28 C.F.R. § 542.18.

appealed through all three levels."); *Bryant*, 530 F.3d at 1378 ("To exhaust administrative remedies in accordance with the PLRA, prisoners must properly take each step within the administrative process." (cleaned up)).

\*   \*   \*

With all that out of the way, we turn to the Petition. Parviz claims that she "submitted all administrative remedy forms from BP-8 to BP-10 to the proper administrative levels[.]" Petition at 2. Parviz then "sent [a BP-11 Form] to the Bureau of Prisons Office of General Counsel on July 3, 2023 requesting her time credits[,]" but "did not receive a response . . . within 30 days." *Ibid.* She therefore claims that she "has exhausted her administrative remedies but continues good faith attempts at informal resolution of her claims [regarding] ETCs under the FSA and other time credits[.]" *Ibid.*

The Government confirms that Parviz has "submitted 22 administrative grievances" during her time in federal custody, though "only three have been regarding jail credit and [ETCs]." Resp. at 4. And it argues that Parviz hasn't exhausted her administrative remedies because "all three of those requests were rejected as improperly filed pursuant to policy." *Ibid.* Since the parties' allegations conflict on exhaustion, we'll resolve the issue at step two of the *Turner* test. *See Williams v. Reddish*, 2024 WL 4008160, at \*13 (M.D. Fla. Aug. 30, 2024) (Howard, J.) ("As dismissal would not be appropriate based on Williams' allegations, the Court will proceed to *Turner*'s second step and make specific findings to resolve the disputed factual issues related to exhaustion.").

To prove that she properly exhausted her remedies, Parviz attaches two unenlightening sets of documents to her Petition. *First*, she provides a collection of emails she sent to her former facility's warden and other staff members, seeking (1) credit for "[t]ime spent in custody at Collin County Detention Facility" and "Palo Alto, California[,]" December 2024 Emails [ECF No. 1-2] at 5, (2) transfer to her "BOP-approved halfway house," *id.* at 6, and (3) "application of [her FSA] credits," *id.* at 7. *Second*, Parviz appends an informal grievance she submitted to an FDC Miami correctional

6

counselor on March 29, 2025—again seeking "application of [her] FSA credits" and "immediate release" to her "halfway house[.]" March 29, 2025 Informal Resolution [ECF No. 1-2] at 1.

The Government's submissions reveal the following about Parviz's grievance history:

1. On February 15, 2024, Parviz filed a BP-10 Form with the BOP's Regional Office, seeking "Jail Time Credit 550 Days" as a remedy. *See* Administrative Remedy Generalized Retrieval ("ARGR") [ECF No. 14-2] at 8. Her appeal was rejected because she "fail[ed] to first file at the institution level in accordance with policy." Declaration of Priscilla Vasquez ("Vasquez Decl.") [ECF No. 14-2] ¶ 8.

2. On March 5, 2024, Parviz filed a BP-11 Form with the BOP's Office of General Counsel, seeking "Jail Time Credit 550 Days" as a remedy. *See* ARGR at 9. Her appeal was (again) rejected due to her "failure to first file at the institution level in accordance with policy." Vasquez Decl. ¶ 9.

3. On July 30, 2024, Parviz filed a BP-10 Form with the BOP's Regional Office, seeking "FSA Time Credits" as a remedy. *See* ARGR at 13. Her appeal was (again) rejected because of her "failure to first at the institutional level in accordance with policy." Vasquez Decl. ¶ 10.

The Government says that "the appropriate forms for filing administrative remedies are readily available to all BOP inmates, ordinarily through their correctional counselor." Resp. at 3. But Parviz never "file[d] any other administrative remedies regarding jail time credits, or FSA Time Credits," and didn't "resubmit the remedies that were rejected" for failing to comply with BOP policy. Vasquez Decl. ¶ 11; *see generally* ARGR. Parviz hasn't come back with *any* evidence that she ever successfully filed a BP-9 at the institutional level. *See generally* Petition; Reply.

Based on our independent review of Parviz's grievance history, we agree that she didn't exhaust her administrative remedies. The BOP regulations are clear that, *before* she could appeal to the Regional Director, Parviz had to file a "formal written Administrative Remedy Request" on a BP-9 Form with her facility's warden within "20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). And her failure to do so—even after three rejected appeals to the Regional and Central Offices—means that Parviz failed to exhaust her remedies. *See Hayes v. Ratherman*, 2011 WL 3843932, at *7 (S.D. Fla. July 22, 2011) (White, Mag. J.) ("Hayes fails to establish

7

that he exhausted his administrative remedies because Hayes has not provided this court with a copy of the . . . remedy request filed with [his facility's] warden." (cleaned up)), *report and recommendation adopted*, 2011 WL 3843924 (S.D. Fla. Aug. 26, 2011) (Seitz, J.); *Irwin*, 40 F.3d at 349 n.2 (requiring an inmate to appeal "through *all three* levels" to "full exhaust[ ] his administrative remedies" (emphasis added)); *Davis v. Warden, FCC Coleman-USP I*, 661 F. App'x 561, 562 (11th Cir. 2016) ("In order to properly exhaust administrative remedies, a petitioner must comply with an agency's deadlines and procedural rules").

But our inquiry doesn't stop there. Although Parviz previously said that she "submitted all administrative remedy forms from BP-8 to BP-10 to the proper administrative levels," Petition at 2, Parviz *now* claims that the BOP didn't "make[ ] administrative remedy forms readily available to [inmates] like [her]," Reply at 3 (cleaned up). As support for this claim, Parviz has submitted the declarations of three inmates who (she says) "intend to testify" that "administrative remedies have not been available" to her. *Ibid.*; *see also* First Declaration of Anna Kay Coenen ("Coenen First Decl.") [ECF No. 16]; Second Declaration of Cathlene Cecile Callahan ("Callahan Second Decl.") [ECF No. 21]; Declaration of Ashley Mullins ("Mullins Decl.") [ECF No. 18].[2] Parviz has also offered her own declaration, swearing that "[t]he Remedy Project has been assisting me with exhausting my administrative remedies in relation to all the claims raised in my habeas petition." Declaration of Mahsa Parviz ("Parviz Decl.") [ECF No. 25] at 1. Parviz thus "requests an evidentiary hearing" on whether she exhausted her administrative remedies. Reply at 3.

It's true that "[a] plaintiff may defeat the failure-to-exhaust argument by showing that the general remedy was effectively unavailable to him." *Wright v. Ga. Dep't of Corr.*, 820 F. App'x 841, 845 (11th Cir. 2020) (citing *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014)). But there are three

---

[2] Parviz submitted two other declarations that are unrelated to this exhaustion issue. *See* Second Declaration of Anna Kay Coenen ("Coenen Second Decl.") [ECF No. 19]; First Declaration of Cathlene Cecile Callahan ("Callahan First Decl.") [ECF No. 17].

problems with Parviz's unavailable-remedies defense. *First*, "we don't consider arguments a party makes for the first time only in reply." *Ether v. Dixon*, 2022 WL 1908918, at *23 (S.D. Fla. June 3, 2022) (Altman, J.) (citing *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not fully presented in a party's initial brief or raised for the first time in the reply brief are deemed waived.")); *United States v. Whitfield*, 2024 WL 2319965, at *1 (11th Cir. May 22, 2024) ("Courts do not address arguments raised for the first time in reply." (citation omitted)).

*Second*, even if we did consider Parviz's new argument, we find that, for two reasons, there's no factual support for her claim that remedies were unavailable to her. *One*, Parviz says that she "was transferred from FDC SeaTac to FCI Tallahassee on May 7, 2024[.]" Petition at 1. In other words, Parviz was at FDC SeaTac when she appealed on February 15, 2024, and March 5, 2024, *see* ARGR at 8–9, and she had already been transferred to FCI Tallahassee when she filed her BP-10 Form on July 30, 2024, *see id.* at 13. But Coenen, Callahan, and Mullins—the three inmates who've submitted declarations on Parviz's behalf—only tell us what they observed at FCI Tallahassee. *See* Coenen First Decl. ¶ 1 ("I was incarcerated at FCI Tallahassee with Mahsa Parviz in 2024[.]"); Mullins Decl. at 1 ("I[,] Ashley Mullins[,] was incarcerated in Tallahassee Correctional from May 2024 to Sept. 2024."); Callahan Second Decl. ¶ 3 ("I was previously in Federal BOP custody at FCI Tallahassee with Mahsa Parviz since August 2024 until I got transferred to FDC Miami later that year."). Parviz hasn't offered *anything* for her position that BP-9 Forms were unavailable to her at FDC SeaTac, *see generally* Petition; Reply—which means that Parviz can't satisfy the exhaustion requirement as to the BP-10 and BP-11 Forms she filed while she was incarcerated there.

*Two*, Parviz hasn't shown that remedies were unavailable to her at FCI Tallahassee. For instance, Coenen says that "it was extremely difficult to obtain administrative remedies" at FCI Tallahassee, and that, "over half the time[,] they wouldn't even accept the remedies[,] stating an implausible reason as to why they couldn't accept the sheet[.]" Coenen First Decl. ¶ 1 (cleaned up).

9

But Coenen says *nothing* about ever seeing FCI Tallahassee officials refuse Parviz's grievances.[3] As for Callahan, she didn't arrive at FCI Tallahassee until "August 2024," Callahan Second Decl. ¶ 3, which means that Callahan has *no personal knowledge* of whether remedies were available to Parviz *before* she filed her deficient BP-10 Form on July 30, 2024. And Mullins (like Coenen) says only that remedy forms at FCI Tallahassee were unavailable to *her*—not Parviz. *See* Mullins Decl. at 1 ("I ask[ed] several time[s], just about every day, for BP forms and remedy forms. I was told that they never had any and if the officer could remember she would get some and make it available which never happen[ed]."). Indeed, even in her own declaration, Parviz says nothing about the remedy process at FCI Tallahassee. *See generally* Parviz Decl.

*Third* (and in any event), the record plainly shows, in two ways, that remedies *were* available to Parviz. *One*, before she transferred to FCI Tallahassee on May 7, 2024, Parviz filed *twelve* grievances with the BOP—and between May 7, 2024, and February 25, 2025 (before she transferred to FDC Miami), Parviz filed *twenty* more.[4] ARGR at 13. Just looking at the sheer volume of her grievances, we think it's a stretch to say that BOP officials were "unable or consistently unwilling to provide any relief to aggrieved inmates," that the grievance process was so "opaque" that it could not be used, or that Parviz was thwarted from filing grievances "through machination, misrepresentation, or intimidation." *Geter v. Baldwin State Prison*, 974 F.3d 1348, 1355 (11th Cir. 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 643–44 (2016)). *Two*, of those twenty grievances she filed at FCI Tallahassee, only *one* related to her

---

[3] Coenen *does* say that she had "personally seen [Parviz] trying to file [sic] out her administrative remedies only for them not to accept them." Coenen First Decl. ¶ 3. But Coenen is here talking about the staff at FDC Miami, rather than FCI Tallahassee. We know this because, in the preceding paragraph, Coenen says that she's "currently housed with Mahsa Parviz at FDC Miami[.]" *Id.* ¶ 2.

[4] The Government's filings show that, while Parviz was at FDC SeaTac, the BOP "received" Parviz's grievances on February 2, 2023, May 11, 2023, two grievances on January 26, 2024, February 1, 2024, February 15, 2024, March 5, 2024, March 15, 2024, April 19, 2024, April 13, 2024, April 23, 2024, and April 29, 2024. *See* ARGR at 6–11. After Parviz transferred to FCI Tallahassee, she submitted grievances (to the Regional Office *and* once to the Central Office) on July 8, 2024, two on July 29, 2024, July 30, 2024, January 24, 2025, January 28, 2025, two on February 3, 2025, and two on February 5, 2025. *See id.* at 12–16.

"FSA Time Credits," which she sent to the Regional Office. ARGR at 13. Still, Parviz filed a "DHO Appeal" with the Regional *and* Central Offices, *id.* at 12, 14, and she hasn't explained why she couldn't (at the very least) exhaust *both* of those remedies when it came to her complaints about her ETCs and jail-time credits. *See, e.g.*, *Moss v. Harwood*, 19 F.4th 614, 622 (4th Cir. 2021) ("Moss offered no account for why he was able to file some—indeed, many—grievances and requests while on lockdown but not the one required here[.] Instead, Moss has effectively made this an 'either-or' case, . . . alleging only a blanket denial of all access to the grievance system during the relevant period—an allegation that cannot be reconciled with the record evidence." (citation omitted)). Because Parviz hasn't shown that administrative remedies were unavailable to her, we **DISMISS** her Petition.

\*   \*   \*

We therefore **ORDER AND ADJUDGE** as follows:

1. Mahsa Parviz's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 [ECF No. 1] is **DISMISSED without prejudice** for failure to exhaust administrative remedies.

2. Any request for an evidentiary hearing is **DENIED**. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.")

3. Parviz's Motion for Release [ECF No. 26] is **DENIED as moot**.

4. The Clerk shall **CLOSE** the case.

**DONE AND ORDERED** in the Southern District of Florida on July 29, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:   counsel of record
      Mahsa Parviz, *pro se*